UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RONALD C. STOKES,**

    **Plaintiff,**

  v.                                    **Case No.: 2:14-cv-1601**
                                              **JUDGE SMITH**
                                              **Magistrate Judge Jolson**

**STEVE ELLS,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court upon the Motion for Summary Judgment (Doc. 59) of Defendant Chipotle Mexican Grill, Inc. ("Chipotle"). Plaintiff opposed Chipotle's Motion (Doc. 71) and Chipotle replied in support (Doc. 72). Additionally, Plaintiff filed a Motion for Summary Judgment as to Plaintiff's Motion to Terminate Defendant's Deposition (Doc. 61). Chipotle opposed the motion (Doc. 65). These matters are now ripe for review. For the following reasons, the Court **GRANTS** Chipotle's Motion for Summary Judgment and **DENIES as moot** Plaintiff's Motion for Summary Judgment as to Plaintiff's Motion to Terminate Defendant's Deposition.

                                              **I.    BACKGROUND**

This lawsuit arises out of the employment relationship between Plaintiff Ronald Stokes ("Stokes" or "Plaintiff") and Chipotle. Stokes is an African American male Ohio resident who served as a crew member at the Heath, Ohio Chipotle restaurant from January 2009 until August 2010. (*See* Doc. 59-11, Stokes Dep. at 6–7, 89, 168–169). Chipotle is a national restaurant chain. (*Id.* at 2). While Stokes worked at Chipotle, the service manager was Rebecca Mahon,

the assistant manager was Jack Loudermilk, and the general manager was named Ramon.  (*Id.* at 224–25, 276).

Stokes began his employment as a general crew member and as part of his employment, had to make entries in a Chipotle-required employee journal called a "Development Journal." (*Id.* at 84-85).  Stokes' first entry noted that he wanted to be a kitchen manager as that was the next level above crew member.  (Doc. 59-5, Development Journal at PAGEID# 1002).  During Stokes' first year with Chipotle, Stokes' Development Journal shows some improvement and satisfaction with Stokes' work and some areas where improvement was necessary.  For example, in June 2009, his manager noted he was progressing well as a crew member.  (*Id.* at PAGEID# 1012).  However, in July 2009, his manager warned that she would write him up if he had another outburst.  (*Id.* at PAGEID# 1011).  In October 2009, the manager filling out the form noted that he was happy with Stokes' performance and that he was helping others and taking advice.  (*Id.* at PAGEID# 1010).  However, the next month Mahon noted that Stokes had "gotten worse with communicating respectfully with others," and noted other critiques about doing dishes, measuring ingredients for recipes, being slow, telling people what to do, and asking others to do his work.  (*Id.* at PAGEID# 1009).  Mahon noted that Stokes had slacked since their last discussion.  (*Id.*).  In December 2009, Loudermilk noted that Stokes was mastering the grill and stove area but also that Stokes needed to get along with the crew better and that his speed of service on the line needed work.  (*Id.* at PAGEID# 1007).  On January 19, 2010, the Journal shows that Stokes' speed of service had improved but that he needed adjustments to his goals to approach others correctly when discussing Chipotle standards and that his new goal was to know the Chipotle standards at all times at work.  (*Id.* at PAGEID# 1005).  On January 24, 2010, Loudermilk noted that Stokes' teamwork was improved and he was getting along with others.

2

(*Id.* at PAGEID# 1006)  Additionally, Loudermilk noted that Plaintiff was willing to do extra cleaning and treated guests with a great smile. (*Id.*).

In May 2010, Chipotle fired Stokes when he missed two consecutive days of work—a fireable offense according to the Chipotle handbook—because he was in jail.  (Doc. 59-11, Stokes Dep. at 183–84; Doc. 59-8, Termination Form).  Stokes testified that he had informed Loudermilk of his upcoming prison time and asked Loudermilk to have another employee work for him.  (Stokes Dep. at188).  Loudermilk filled out a performance discussion form on April 30, 2010, noting that Stokes missed days of work for jail time which were considered to be unexcused.  (Doc. 31-5, Ex. J to 2nd Am. Compl. at 1–2).  After leaving jail, Plaintiff contacted Chipotle Human Resources and explained what occurred using a recording of his jail house phone call to Loudermilk.  (Doc. 59-11, Stokes Dep. at 189).  Chipotle reinstated him on May 12, 2010, and provided three days of back pay.  (*Id.* at 190–91; Doc. 31-5, Ex. J to 2nd Am. Compl. at 3).  Although Chipotle offered stokes the opportunity to work at the Newark store, Stokes chose to remain at the Heath store because he did not have a driver's license.  (Doc. 59-11, Stokes Dep. at 190–91).  However, Stokes does recall that he was counseled on insubordination and that he knew he was supposed to work on being a model employee.  (*Id.* at 202).

On May 18, 2010, Loudermilk wrote in the Journal that Stokes had a clean slate.  (Doc. 59-5, Development Journal at PAGEID# 1021).  However, on the same day, Loudermilk and Donna Carney, the area manager for Chipotle, sat down with Stokes to fill out another Journal entry.  (*Id.* at PAGEID# 1022).  Carney wrote that she, Loudermilk, and Stokes went over a performance review.  (*Id.*).  Stokes alleges that they did not go over the "13 characteristics" or the "Crew Road Map" as is written in the Journal entry.  (Stokes Dep. at 200–02).  On the same

3

day, Loudermilk and Stokes signed a performance review that noted Plaintiff's overall performance "Needs Improvement," the lowest standard on the form. (Doc. 59-6; May 18 Performance Review). Stokes was aware that he could not be considered for a promotion if his performance review scored him in the "needs improvement" category. (Doc. 59-11, Stokes Dep. at 215–16). Stokes met the standards for food preparation, use of equipment, and customer service but received a "needs improvement" rating for his people skills with other employees and for a category of additional expectations. (*Id.*). The review notes that he did not communicate with managers and crew in a respectful way, that he was not open to feedback, and that he only helped team members when asked. (*Id.*). Plaintiff testified that he believes the portions of the review were fabricated by Carney and Loudermilk, specifically those that mention his negative comments about the management team, the 13 Characteristics, and his refusal to help others unless asked. (*Id.* at 204). However, he agrees that he needed improvement in his "People" category. (*Id.*). During the meeting, Stokes expressed his belief that some of the areas of improvement were false and stated that Carney replied that those things did happen and that Stokes was making the workplace environment hostile with the other employees. (*Id.* at 206). Loudermilk testified that his only comments which could be perceived as negative were the times he told other employees, including Loudermilk, that he believed he was being discriminated against because of his race. (*Id.* at 208). Plaintiff filed an EEOC complaint on May 19, 2010, based on Loudermilk's decision to terminate him during his jail term. (*Id.* at 317).

After filing his EEOC complaint, Plaintiff's he felt that other employee's behavior towards him changed because Loudermilk told the other employees about Stokes' EEOC filing. (*Id.* at 233–34). Stokes noted that his hours started fluctuating more and that some of his shifts

4

did not have his job description meaning that he had to come to work unprepared. (*Id.* at 235–36). He also received more shifts as a line-backer instead of working the grill. (*Id.* at 236). Last, he felt that Loudermilk's comments in his Journal started changing after his filing with the EEOC. (*Id.*).

At some unknown time, Stokes asked Loudermilk why he was not being promoted while others with less experience were being considered for promotions. (*Id.* at 209).[1] Loudermilk told Stokes he would never be a kitchen manager without further explanation. (*Id.*). Stokes testified that Loudermilk would require him to do work beyond what was required of the other employees. Specifically, Stokes testified that Loudermilk would require Stokes to take dishes from the line to the dishwasher, rather than leaving them on the back table like the other employees on the line. (*Id.* at 229). Stokes also felt that Loudermilk used negative body motions and gestures when speaking with Stokes that he did not use with the other Caucasian or Mexican employees. (*Id.* at 229–30).

Plaintiff resigned from Chipotle with a letter of resignation July 22, 2010, thereby giving Chipotle his two-week notice. (*Id.* at 170). Plaintiff informed Chipotle that he was pursuing a job for a different company that provided him better opportunities. (*Id.* at 170–71). While Plaintiff was working at Chipotle, a customer called Plaintiff over and offered him an opportunity for another job at AGC Flat Glass, which he pursued after leaving Chipotle. (*Id.* at 69). Plaintiff filed suit in this case on September 17, 2014, making claims against Chipotle CEO Steve Ells and Loudermilk. (Doc. 1-1, Compl.). After this Court dismissed Ells and Loudermilk, Plaintiff amended his complaint to make claims against Chipotle. (Doc. 31, Am.

---

[1] Earlier, Plaintiff also testified that he did not tell Loudermilk that he wanted to move up in the company. (Doc. 59-11, Stokes Dep. at 176–77 ("Q. You didn't tell Jack you wanted to advance? A. No, I don't think I told Jack neither.")).

Compl.). Although not specifically enumerated, Plaintiff brings a claim for racial discrimination and more specifically, claims for failure to promote, hostile work environment, and retaliation.

## II. STANDARD OF REVIEW

Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id*. at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment,

the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*.

### III.  DISCUSSION

Plaintiff, proceeding *pro se*, initiated this case against Chipotle, alleging generally that Chipotle discriminated against him based on race by failing to promote him.  Although his claims against Chipotle are not clearly enumerated in his Amended Complaint, he has made a number of race discrimination based allegations that will be construed as claims for failure to promote, hostile work environment, and retaliation.[2]  Chipotle has moved for summary judgment on all of Plaintiff's claims.  The Court will address each of Plaintiff's claims against Chipotle in turn.

**A.    Plaintiff's Race Discrimination Failure to Promote Claim**

Although Plaintiff does not specifically enumerate a separate claim for failure to promote, he alleges that in 2009 and in 2010 "I was over looked for the [kitchen manager] position I was led to believe I was being hired and trained for."  (Doc. 31, Am. Compl. ¶¶ 10–12).  He further alleges:

> "I believe that Chipotle Mexican Grill, Inc. violated my constitutional rights, specifically Title VII of the Civil Rights Act of 1964 because they failed to provide me equal opportunity for each applicant regardless of race because Chipotle Mexican Grill, Inc. overlooked me solely due to my race and treated me differently from the Caucasian and Mexican candidates who were seeking the same position in which I was more highly trained and qualified for."

(*Id*. at ¶ 21).  In the legal claims section of his Amended Complaint, Plaintiff alleges that Chipotle acted "with deliberate indifference to the circumstances of promotion and advancement in regards to my career at Chipotle Mexican Grill, Inc. by not offering me equal opportunity in

---

[2] To the extent Plaintiff also brings a general race discrimination claim, it fails for the same reasons set forth in Section D below addressing Plaintiff's retaliation claim.  Plaintiff has failed to establish that he suffered an adverse action, a necessary element to maintain a race discrimination claim.

advancement that was offered to other employees. This deliberate and intentional discrimination was solely based on my race as a black male." (*Id.* at ¶ 36). Chipotle has moved for summary judgment on Plaintiff's failure to promote claim asserting that Plaintiff has not presented sufficient evidence to support a failure to promote claim other than his membership in a protected class. (Doc. 59, Def.'s Mot. at 20).

In order to maintain a prima facie case for a claim of failure to promote due to race discrimination, Plaintiff must prove that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; (4) an individual of similar qualifications outside of the protected class received the job. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

Defendant argues that Plaintiff has not alleged that he applied for a promotion, nor has he alleged that he was considered for and denied a promotion. Defendant further argues that even if the Court finds that the first three elements have been met, Plaintiff's argument that he was more qualified than other candidates outside of his protected class who received promotions is "based on his subjective belief that he was more qualified than other hourly Chipotle employees but he advances absolutely no evidence in support of his claims." (Doc. 59, Def.'s Mot. at 21).

Plaintiff generally asserts that on multiple occasions he was overlooked for promotions to kitchen manager and in his deposition testified that around January 2010, it was his goal to become a leader at Chipotle. (Doc. 59-11, Stokes Dep. at 176). But when asked if he had communicated his desire to be kitchen manager to Ramon, a Chipotle general manager, or to another manager, Plaintiff responded that he never told Ramon or Loudermilk, but he did tell

Gina Leanos[3] and Mahon that he "wanted to advance in the company." (*Id*. at 176–77). Leanos only served as general manager for approximately five months of Plaintiff's Chipotle tenure before leaving and then Ramon took over as general manager. (*Id*. at 52–53). Plaintiff also mentions telling Mahon his desire to become a manager. (*Id.* at 177).

Plaintiff has stated that he expressed interest in advancing in the company to two people, one of whom left Chipotle approximately five months into Plaintiff's stint there. Plaintiff states that there was a lot of turnover during his time with Chipotle. (*Id*. at 64). As the kitchen manager position became available in 2009 and 2010, Plaintiff alleges he was overlooked for that position, but he fails to allege that he applied for the position or specifically told the general manager at the time that he would like to be considered for the position. Without specifically applying for or expressly stating his interest in the position, he cannot establish that he was considered for and denied a promotion. Therefore, Plaintiff's failure to promote claim fails as a matter of law because he did not apply for any promotions.

Even if Plaintiff had sufficiently established the first three elements of a prima facie case of failure to promote, he would still have to establish that an individual of similar qualifications outside of the protected class received the job. Plaintiff seems to suggest that he was entitled to the kitchen manager position because of his experience with Chipotle, as well as his expertise. He considered himself to be the best at working the grill. (Doc. 59-11, Stokes Dep. at 114). The only evidence he offers is his subjective belief that he was more qualified than other hourly Chipotle employees. However, Plaintiff's "subjective view of [his] qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination." *Hedrick v. W. Reserve Care. Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). Plaintiff identified "Kayla" and

---

[3] Gina Leanos originally hired Plaintiff. (Doc. 59-11, Stokes Dep. at 46).

"Mike" as employees who received a kitchen manager promotion. (Doc. 59-11, Stokes Dep. at 320). However, Plaintiff offered that both worked first shift, meaning he rarely worked with either person. (*Id.* at 320–23). The only knowledge Plaintiff had regarding their qualifications was that Mike was a rehire who had previously worked at Chipotle and Kayla started at Chipotle about a year after Plaintiff started. (*Id.*). Other than his own subjective belief that he was equally qualified or more qualified, Plaintiff presents no evidence that shows an individual of similar qualifications received the job. For these reasons, Defendant is entitled to summary judgment on Plaintiff's failure to promote claim.

**B.    Constructive Discharge**

To the extent Plaintiff is arguing that he was constructively discharged by Chipotle because of Chipotle's failure to promote him, such an argument also fails because Plaintiff voluntarily resigned. Constructive discharge is not a cause of action, but rather a means of proving the element of an adverse employment action when an employee resigns instead of being fired. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001) (plaintiff may establish an adverse employment action by demonstrating that she was constructively discharged); *Starks v. New Par*, No. 98-1300, 1999 WL 357757, at *5 (6th Cir. May 11, 1999) (finding that constructive discharge is not a cause of action) (citing *Kroll v. Disney Store*, 899 F. Supp. 344, 347 (E.D. Mich. 1995)).

In this case, Plaintiff voluntarily resigned and resignations are presumed to be voluntary. *See Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999). A plaintiff claiming constructive discharge must prove that there were aggravating factors that caused the resignation. *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir. 1987). "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must

10

actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Courts have recognized several methods which may be considered when determining whether the employer created working conditions that a reasonable person would find intolerable, including whether a plaintiff received: (1) a demotion; (2) a reduction in salary; (3) a reduction in job responsibilities; (4) a reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee to resign; or (6) offers of continued employment on less favorable terms. *See Logan*, 259 F.3d at 569.

Plaintiff does not allege any demotion, reduction in salary, reduction in job responsibilities, reassignment, or continued employment on less favorable terms. Plaintiff's only allegation is that Chipotle's failure to promote him led to his forced resignation. He states generally "I felt uncomfortable working for Chipotle," "maybe it would be best just to leave this company since I'm not getting an equal opportunity employment," "I felt like management didn't like me," "I felt like they made people turn on me," "I just felt like, you know, I been discriminated against this company, the management, and I just felt like my hard work is better than that, so I – I moved on." (Doc. 59-11, Stokes Dep. at 169). The Sixth Circuit has held that an employer's decision not to promote a plaintiff to a position that the plaintiff believed he was entitled, without more evidence, does not establish a claim for constructive discharge. *Lindsay v. Pizza Hut of Am.*, 57 F. App'x 648, 651 (6th Cir. 2003); *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). Accordingly, Plaintiff has not established that he was constructively discharged from his job at Chipotle.

C.      **Plaintiff's Hostile Work Environment Claim**

In addition to the failure to promote claim, Plaintiff has made statements and/or general allegations suggesting that he intended to plead claims for race discrimination, hostile work environment, and retaliation.

11

To establish a claim for discrimination by being subjected to a hostile work environment, Plaintiff must show: (1) he was a member of a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, such as race or gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventive actions. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir. 1999) (discussing the requirements for proving a hostile work environment claim based upon gender); *Moore v. KUKA Welding Sys. & Robot. Corp.*, 171 F.3d 1073, 1078–79 (6th Cir. 1999) (setting forth the elements of a prima facie case for a claim of a hostile work environment based upon race).  The Sixth Circuit has further explained that a Title VII plaintiff must show that the workplace:

> is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment— an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993) (internal quotes and citations omitted)); *see also Howard v. Bd. of Educ. of Memphis*, 70 F. App'x 272, 282 (6th Cir. 2003).  Thus, there is both a subjective and an objective prong to this standard.  In other words, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997) (citing *Harris*, 510 U.S. at 21–22).  The question before the Court is whether a reasonable person would have found Plaintiff's work environment to be hostile or

abusive. In making this determination, there are several factors the Court must consider, including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

There is no dispute that Plaintiff is a member of a protected class. However, Defendant argues that Plaintiff has not alleged any actionable harassment occurred that was severe and pervasive. (Doc. 59, Def.'s Mot. at 30). The Court agrees. Plaintiff does not make any specific allegations of harassment. He merely alleges that he was not promoted and generally made statements during his deposition that "I just felt like, you know, I been discriminated against this company, the management, and I just felt like my hard work is better than that, so I – I moved on." (Doc. 59-11, Stokes Dep. at 169). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988). Further, Plaintiff has failed to establish that any statements and/or allegations are linked to his race. Accordingly, Defendant Chipotle is entitled to summary judgment on Plaintiff's hostile work environment claim.

**D.**     **Plaintiff's Retaliation Claim**

Title VII of the Civil Rights Act provides that an employer may not discriminate against an employee because that employee "'made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the activity was known to Chipotle; (3) Chipotle then acted in a way that was materially adverse to Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Martin v. Toledo Cardiology Consultants,*

*Inc.*, 548 F.3d 405, 412 (6th Cir. 2008) (citing *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 552–53 (6th Cir. 2002)). Adverse employment actions may include "termination of employment, a demotion experienced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007).

Plaintiff alleges that he engaged in protected activity by filing a claim with the EEOC. He further states that Loudermilk had knowledge of the claim and took an adverse action against him. (Doc. 59-11, Stokes Dep. at 166–67). Plaintiff makes the following statements that could be construed as allegations of adverse actions against him: (1) a change in his hours; (2) a change in the way the schedules were drafted by management such that the crew member duties were not stated; (3) a change in job assignments from "grill" or "linebacker" or "dining room", and (4) negative reviews. (*Id.* at 235–36). Plaintiff, however, was not terminated, he resigned. And as set forth above, he cannot establish a constructive discharge sufficient to prove an adverse action. Nor, did Plaintiff receive a demotion, decrease in pay, or loss of benefits. Plaintiff's allegations that his hours were changed do not constitute an adverse action. His hours were not reduced, just changed. Plaintiff does not even allege that his hours were worse.

An adverse employment action is "a materially adverse change in the terms of her employment." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Although a reassignment without salary or work hour changes is not normally an adverse action, it may be if it "constitutes a demotion evidenced by 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir.

14

2004), aff'd sub nom. 548 U.S. 53 (2006) (citing *Kocsis* 97 F.3d at 886); *see also Wade v. Automation Pers.* Servs., Inc., 612 F. App'x 291, 300 (6th Cir. 2015) (shift change by one hour is not materially adverse). *De minimis* actions are not materially adverse and are not actionable. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir. 2000) ("materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities"). In *Kocsis*, the Sixth Circuit noted that reassignment, a requirement that an employee sign an agreement with the employer as a condition of promotion, a negative public perception concerning a transfer or a particular job, a transfer to a position with different responsibilities, semantic changes in title, and the bruising of an ego did not, without more, did not rise to the level of "materially adverse changes" in the terms of employment. 97 F.3d at 885–87. Courts in this circuit have also found that a reprimand or an involuntary transfer, absent loss of pay or benefits, or change in duties, does not constitute a materially adverse change in employment. *See Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003) (finding transfer which did not negatively change duties, pay, or commute for employee was not materially adverse); *Reid v. Madison Cty, Tenn.*, No. 98-5312, 1999 WL 196560, at *2 (6th Cir. Apr. 1, 1999) (holding a reprimand is not an adverse action where it resulted in no changes of duty, pay, or benefits). Accordingly, Plaintiff has failed to establish that he suffered an adverse action, a necessary element to maintain a claim for retaliation. Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**E.     Plaintiff's Motion for Summary Judgment**

Last, Plaintiff moved for Summary Judgment on his Motion to Terminate Defendant's Deposition. Plaintiff originally moved to terminate his deposition on May 31, 2016 (Doc. 56). On July 5, 2016, Magistrate Judge Deavers denied Plaintiff's motion as moot (Doc. 58).

Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED as moot** for the same reasons enumerated in Magistrate Judge Deavers' earlier order.

## IV. CONCLUSION

Based on the foregoing, Chipotle's Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for Summary Judgment on his Motion to Terminate his Deposition is **DENIED as moot**. The Clerk shall **REMOVE** Documents 59 and 61 from the Court's pending motions list. Accordingly, The Clerk shall **ENTER** final judgment in favor of Chipotle and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

                                           */s/ George C. Smith*
                                           **GEORGE C. SMITH, JUDGE**
                                           **UNITED STATES DISTRICT COURT**